IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLA WERNICKI-STEVENS, | : | CIVIL ACTION |
| | : | NO. 08-1328 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RELIANCE STANDARD LIFE INS. | : | |
| CO., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         JULY 15, 2009

Plaintiff Marla Wernicki-Stevens ("Plaintiff") brings
this ERISA action seeking payment of long-term disability
benefits, retroactive to May 3, 2007, by Defendant Reliance
Standard Life Insurance Company ("Reliance").[1]  Before the Court
are cross-motions for summary judgment.  For the reasons that
follow, each motion for summary judgment will be granted in part
and denied in part.

I.    BACKGROUND

Until January 25, 1999, Plaintiff was employed as a
graphic designer at the Art Guild, Inc., in West Deptford, New

---

[1]    The Employee Retirement Security Act of 1974 ("ERISA"),
29 U.S.C. § 1132(a)(1)(B), allows an individual to bring a civil
action "to recover benefits due to him under the terms of his
plan, to enforce his rights under the terms of the plan, or to
clarify his rights to future benefits under the terms of the
plan."

Jersey.  During her employment, Plaintiff enrolled in The RSL
Group and Blanket Insurance Trust (the "Plan"), a group long-term
disability policy, which is insured by Reliance under a policy
bearing Group Policy No. LSC 067377.[2]  Under the terms of the
Plan, Reliance retained discretionary authority to determine a
participant's eligibility for benefits.[3]

On January 26, 1999, Plaintiff was diagnosed with
chronic fatigue syndrome secondary to Lyme disease, post herpatic
neuropathy, and anxiety.[4]  As a result, she took a medical leave
of absence from the Art Guild, Inc. and applied for long-term
disability benefits under the Plan.  On April 26, 1999,
Plaintiff's request for long term disability benefits was granted

---

[2]     Unfortunately, the Court has only limited information
regarding the Plan's provisions.  Plaintiff submitted  "Long Term
Disability Plan Documents" as Exhibit A to her motion for summary
judgment, but these consist of only two excerpted pages from what
is presumably a much longer document.  (See Pl.'s Mot. for Summ.
J. Ex. A; doc. no. 10.)

[3]     Plaintiff repeatedly describes Reliance as the "Plan
Administrator" and asserts that Reliance performed "ministerial
functions including determination of eligibility for benefits."
(See Compl. ¶ 7, doc. no. 1; Pl.'s Mot. for Summ. J. at 1; doc.
no. 9.)  Reliance maintains that it is not the "Plan
Administrator" but rather a "claim administrator and a fiduciary
under the Plan."  (See Def.'s Mot. for Summ. J. at 2 n.1, doc.
no. 11.)  For the purposes of the instant motions, this is a
distinction without a difference.  (See infra, Part II.B
(discussing ERISA standard of review)).

[4]     Plaintiff also claims to be suffering from shingles,
fibromyalgia, depression, and a neuropsychological impairment.
(Compl. ¶ 26, doc. no. 1.)

- 2 -

and Plaintiff began receiving benefits under the Plan.[5]
Plaintiff continued to receive these long-term disability
benefits for approximately eight years, until May 3, 2007.

On May 3, 2007, however, citing the results of a
Functional Capacity Examination ("FCE") that Plaintiff had
undergone on March 20-21, 2007,[6] Reliance terminated Plaintiff's
long-term disability benefits, finding that Plaintiff no longer
met the Plan's definition of "Total Disability."  (Pl.'s Mot. for
Summ. J. Ex. M, doc. no. 10.)  Specifically, Reliance found that
Plaintiff was "capable of full-time sedentary restrictions and

_____

[5]     Additionally, on December 8, 2001, Plaintiff was
awarded Social Security Disability Benefits.  (See Pl.'s Mot. for
Summ. J. Ex. B, doc. no. 10.)

[6]     Plaintiff suggests that the FCE was ordered by Reliance
"with an eye toward closing the claim."  (Pl.'s Mot. for Summ. J.
at 9, doc. no. 9.)  Plaintiff's objection is likely based on the
following language in an internal Reliance memorandum: "Prepare
to close claim if FCE supports ability to RTW in sedentary
occupation as claimant's own occupation was sedentary."  (Pl.'s
Mot. for Summ. J. Ex. J, doc. no. 10.)  This contention, however,
is not supported by the record.  Rather, it appears that the FCE
was requested only after an internal review of Plaintiff's file
revealed that "Updated meds are currently greater than 30 months
stale.  Medical updates and review of significant subjective
complaints warranted . . . . Last medical is from 2003."  (Id.);
see also Pinto v. Hartford Ins. Co., 501 F.3d 154, 166 (3d Cir.
2007) (noting that "periodic reviews are typical in the
industry").  Moreover, Ingrid Bergstrom, R.N., Reliance's claim
reviewer, noted that the FCE was necessary because "Dr. Eiras . .
. failed to really provide any kind of indication as to what the
claimant's physical abilities were.  They were basically what the
claimant was complaining about, what her complaints were.  There
was no physical exam.  She didn't indicate what her strength was,
anything like that."  (Pl.'s Mot. for Summ. J. Ex. G at 28:8-15,
doc. no. 10.)

limitations with position change, and restrictions on upper extremity use." (Id.) Further, Reliance noted that Plaintiff's occupation, Graphic Designer, required only sedentary exertion. (Id.; see also id. Ex. U (vocational review concluding that Plaintiff would be able to perform the duties of a graphic designer, despite physical restrictions indicated by FCE).)

On August 8, 2007, Plaintiff appealed Reliance's decision. In support of her appeal, Plaintiff submitted additional medical records and a one-page letter from her treating physician, Dr. Emilia Eiras, dated October 10, 2007, in which Dr. Eiras stated that "[a]fter reviewing Marla's Functional Capacity Examination, it is clear to me that Marla is incapacitated to work in any capacity." (Id. Ex. Q.) Reliance referred Plaintiff's entire claim file to Dr. Howard Choi, a board certified physical medicine and rehabilitation specialist, for an independent review. Dr. Choi issued two reports, dated October 15 and December 10, 2007, in which he concluded that Plaintiff's total disability claim was not supported by "objective findings." (Id. Exs. N & O.) Specifically, Dr. Choi noted that "Dr. Eiras' letter of 10/10/07 does not include a rationale for why she concluded that the FCE showed that the claimant was incapacitated to work in any capacity" and that "[t]he records for each visit with Dr. Eiras . . . reflect that this health care provider essentially catalogs the claimant's

complaints and then proceeds to prescribe medications, without a neurological, musculoskeletal or functional examination." (Id. Ex. O.)  Plaintiff's appeal was denied on January 8, 2008. (Id. Ex. T.)  This lawsuit followed.


II.  LEGAL STANDARD

   A.   Motion for Summary Judgment under Fed. R. Civ. P. 56

        A court may grant summary judgment when "the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id. at 248-49.  "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007). However, while the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must - by affidavits or as

- 5 -

otherwise provided in [Rule 56] - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

These rules apply with equal force to cross-motions for summary judgment.  See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).  When confronted with cross-motions for summary judgment, as in this case, the Court considers each motion separately.  See Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 150 (3d Cir. 1993) (noting that concessions made for purposes of one party's summary judgment motion do not carry over into the court's separate consideration of opposing party's motion).


B.   ERISA Standard of Review

A denial of a claim for benefits brought pursuant to ERISA is governed by a de novo standard of review, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Where the plan administrator is granted such discretion, the Court must review the administrator's denial of a claim for benefits using an arbitrary and capricious standard of review.  See id. at 111 (noting that where a plan administrator is given discretionary authority "[t]rust principles make a deferential standard of review

- 6 -

appropriate").

"Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of the Plan administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (quoting Adamo v. Anchor Hocking Corp., 720 F. Supp. 491, 500 (W.D. Pa. 1989)); see also Ellis v. Hartford Life and Accident Ins. Co., 594 F. Supp. 2d 564, 566 (E.D. Pa. 2009) (noting that a court applying an arbitrary and capricious standard of review is "not free to substitute its judgment for that of the administrator"); Fabyanic v. Hartford Life and Accident Ins. Co., No. 02:08-cv-0400, 2009 WL 775404, at *5 (W.D. Pa. Mar. 18, 2009) (noting that the phrases "abuse of discretion" and "arbitrary and capricious" are interchangeable and that both are "understood to require a reviewing court to affirm the Administrator unless an underlying interpretation or benefit determination was unreasonable, irrational, or contrary to the language of the plan").

Until recently, courts in the Third Circuit adjusted the arbitrary and capricious standard of review "using a 'sliding scale' in which the level of deference . . . accorded to a plan administrator would change depending on the conflict or conflicts of interest affecting plan administration." Estate of Schwing v.

The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009); see also Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387, 392 (3d Cir. 2000) (discussing "heightened" arbitrary and capricious standard of review).  However, following the Supreme Court's decision in Metropolitan Life Ins. Co. v. Glenn, this type of enhanced arbitrary and capricious review is no longer appropriate.  128 S.Ct. 2343, 2350 (2008) (finding that "a conflict should be weighed as a factor in determining whether there is an abuse of discretion" (internal quotations omitted)); see also Schwing, 562 F.3d at 525 ("Accordingly, we find that, in light of Glenn, our "sliding scale" approach is no longer valid. Instead, courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion"); Ellis, 594 F. Supp. 2d at 566 ("Glenn makes clear that there is no heightened arbitrary and capricious standard of review"); Farina v. Temple Univ. Health Sys. Long Term Disability Plan, No. 08-2473, 2009 WL 1172705, at *9 (E.D. Pa. Apr. 28, 2009) (noting that post-Glenn, "there are only two possible standards of review that could apply . . . arbitrary and

capricious or <u>de novo</u>).[7]

Thus, in reviewing Plaintiff's ERISA claim in the
instant case, the Court will apply a deferential arbitrary and
capricious standard of review.  In so doing, the Court will
"'take account of several different considerations of which a
conflict of interest is one,' and reach a result by weighing all
of those considerations."  <u>Schwing</u>, 562 F.3d at 526 (quoting
<u>Glenn</u>, 128 S.Ct. at 2351); <u>see also</u> <u>Post v. Hartford Ins. Co.</u>,
501 F.3d 154, 162 (3d Cir. 2007) (noting that a court performing

---

[7]    Although the Supreme Court had decided <u>Glenn</u> when the
instant motions for summary judgment were filed, the Third
Circuit had not yet decided <u>Schwing</u>, in which it explicitly
repudiated the "sliding scale" approach.  Thus, in her brief,
Plaintiff argued that, despite <u>Glenn</u>, a "significantly
heightened" form of arbitrary and capricious review was justified
under the facts of this case.  (Pl.'s Mot. for Summ. J. at 7-11,
doc. no. 9; Pl.'s Reply at 2, doc. no. 12.)  Reliance argued
that, post-<u>Glenn</u>, a decision by a plan fiduciary vested with
discretionary authority could only be reviewed under an arbitrary
and capricious standard.  (Def.'s Mot. for Summ. J. at 2, doc.
no. 11.)  As the Third Circuit clarified in <u>Schwing</u>, Reliance's
argument on this point prevails.

Additionally, the Court notes that although the parties
dispute Reliance's precise role in administering the plan at
issue, neither party suggests that Reliance was not an
administrator or fiduciary such that Plaintiff would be entitled
to a <u>de novo</u> standard of review.  (<u>See</u> Pl.'s Mot. for Summ. J. at
7, doc. no. 9 (noting that "Reliance exercises sole discretionary
authority for determining Plan members' eligibility for
benefits"); <u>see also</u> Def.'s Mot. for Summ. J. at 2 n.1, doc. no.
11 ("Plaintiff mistakenly states in her brief that Reliance
Standard is the Plan Administrator.  While Reliance Standard is
the claim administrator and a fiduciary under the Plan, it is not
the Plan Administrator, an entity under ERISA that has specific
responsibilities.")) Reliance's proper title aside, the Court
finds that an arbitrary and capricious standard of review is
appropriate in this case.

this inquiry must consider "both structural and procedural factors" and that "[t]he structural inquiry focuses on the financial incentives created by the way the plan is organized, whereas the procedural inquiry focuses on how the administrator treated the particular claimant").[8]

III. DISCUSSION

    A.   <u>Plaintiff's Motion for Summary Judgment</u>

        Plaintiff moves for summary judgment, arguing that Reliance's discontinuation of her long-term disability benefits was arbitrary and capricious.  Plaintiff argues that Reliance's position as administrator of the Plan creates an inherent structural conflict of interest.  Additionally, Plaintiff argues that (1) Reliance's reversal of its longstanding position that Plaintiff is totally disabled is not supported by sufficient facts; (2) Reliance improperly relied on "paper reviews" of Plaintiff's claim file; (3) Reliance's focus on objective data (i.e., the FCE) is per se arbitrary and capricious, given the nature of Plaintiff's disability; and (4) Reliance selectively

---

     [8]    Prior to the <u>Glenn</u> and <u>Schwing</u> decisions, courts in the Third Circuit analyzed structural and procedural factors separately, to determine whether a heightened arbitrary and capricious standard of review was appropriate.  <u>See</u> <u>Post</u>, 501 F.3d at 154.  Now, however, while these factors remain relevant, such a rigid analytical framework is not required.  <u>See</u> <u>Schwing</u>, 562 F.3d at 526 ("noting that "benefits determinations arise in many different contexts and circumstances, and, therefore, the factors to be considered will be varied and case-specific").

relied on medical reports, crediting only the portions of the reports that supported its position and entirely ignoring Plaintiff's neuropsychological impairment.  These arguments will be addressed <u>seriatim</u>.[9]

As an initial matter, the Court notes that, based on the administrative record before it, it has little information regarding Reliance's structural conflict of interest.  Indeed, although the parties have agreed that Reliance is at least a fiduciary under the Plan, and thus an arbitrary and capricious standard of review is appropriate, Reliance's exact role in

---

[9]     Plaintiff also points out that Reliance's termination of her long-term disability benefits is at odds with Social Security's continuing award of disability benefits.  Although the Court recognizes that such a disagreement "is a relevant-though not dispositive - factor" in its analysis, it finds that, under the facts presented here, the disagreement between Reliance and Social Security is neither suspect nor particularly relevant. <u>See</u> <u>Post</u>, 501 F.3d at 167; <u>see also</u> <u>Hoch v. Hartford Life and Accident Ins. Co.</u>, No. 08-4805, 2009 WL 1162823, at *17 (E.D. Pa. Apr. 29, 2009) (declining to place "substantial weight" on the Social Security Administration's determination of Plaintiff's disability because "the SSA has very different guidelines for determining disability than does the Policy in this case").

As Reliance noted in a January 8, 2008 letter to Plaintiff's attorney, "the receipt of [Social Security] benefits does not guarantee that an individual will be awarded long-term disability benefits under [the Plan] (and vice versa).  A person's entitlement to each of these benefits is based upon a different set of guidelines, and sometimes leads to differing conclusions.  Oftentimes, each benefit provider is also considering different medical evidence in the evaluation of a claim."  (Pl.'s Mot. for Summ. J. Ex. T, doc. no. 10.)  Indeed, Plaintiff did not submit any evidence to suggest that Social Security re-examined her eligibility for benefits since its initial award to her in 2001.

administering the Plan is not clear.  See supra, notes 3 & 7.
Additionally, neither party has adequately explained Reliance's
relationship to Plaintiff's former employer, the Art Guild, Inc.,
or explained how exactly the Plan is funded.  (See Pl.'s Mot. for
Summ. J. at 9, doc. no. 9 (arguing that "Reliance obviously funds
and administers the plan apart from plaintiff's former
employer"); see also supra, note 2 (noting that Plaintiff
submitted only two pages of documents pertaining to the Plan).)
Still, because the parties have agreed that Reliance is acting
under a structural conflict of interest, the Court will consider
this factor when deciding the instant motions.

        Turning to the alleged "procedural anomalies" in this
case, Plaintiff argues first that Reliance's decision to
discontinue Plaintiff's long-term disability benefits is suspect
because it was "solely" based on the results of the FCE, which
contradicted other documents in the administrative record.
(Pl.'s Mot. for Summ. J. at 15-16, doc. no. 9; id. Ex. K, doc.
no. 10.)  In support of this argument Plaintiff points to the
fact that in 2003 and 2004, years before the FCE was
administered, Reliance concluded that Plaintiff was "totally
disabled."  (Pl.'s Mot. for Summ. J. at 15-16, doc. no. 9; id.
Exs. F & H, doc. no. 10.)  Similarly, Plaintiff relies upon
medical reports in her claim file, many of which predate the FCE
by more than three years.  (See, e.g., id. Ex. C, doc. no. 10

- 12 -

(doctor's note from 2000).)  While the Third Circuit has
recognized that an insurer's bias may be evident where it
"reverse[s] its own initial determination that [Plaintiff] was
totally disabled without receiving <u>any</u> additional medical
information," Plaintiff does not cite to any support for her
argument that an FCE cannot constitute legitimate "additional
medical information."  <u>Pinto</u>, 214 F.3d at 393 (emphasis added).
Moreover, the FCE's conclusion that Plaintiff was capable of
full-time sedentary work, with restrictions, was confirmed by Dr.
Choi's independent review.  Plaintiff may disagree with these
conclusions, but there is little to suggest that Reliance's
decision to credit the FCE was "without reason."

        Second, Plaintiff argues that Reliance improperly based
its decision to discontinue Plaintiff's long term disability on a
"paper review" of Plaintiff's file.  Specifically, Plaintiff
objects to the review by Ingrid Bergstrom and Dr. Choi, since
neither spoke directly to Plaintiff or have expertise in
neuropsychology.  (Pl.'s Mot. for Summ. J. at 17-18, doc. no. 9.)
In response, Defendant points out that Plaintiff's treating
physician, Dr. Eiras, is a doctor of internal medicine and "is
not a specialist in any capacity."  (Def.'s Mot. for Summ. J. at
11, doc. no. 11.)  Additionally, Defendant notes that, based on
the administrative record before the Court, it does not appear
that Plaintiff was <u>ever</u> under the care of a specialist for either

her physical or neuropsychological complaints, or ever even referred to a specialist by Dr. Eiras.  (Id.)  Further, Defendant argues that a physical examination of Plaintiff was unnecessary because of the FCE.  (Id. at 7.)

A "paper review" of a claim file is not, by itself, arbitrary and capricious.  See Dolfi v. Disability Reinsurance Mgmt. Servs. Co., 584 F. Supp. 2d 709, 735 (M.D. Pa. 2008) (finding that insurer's reliance on a paper review, rather than a physical examination, was not per se arbitrary and capricious).  Moreover, the fact that Reliance credited the opinions of Nurse Bergstrom[10] and Dr. Choi over Plaintiff's treating physician, Dr. Eiras, is also not necessarily arbitrary and capricious.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) (holding that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation").  Here, there is no evidence that Reliance arbitrarily refused to credit Dr. Eiras' opinion, rather the

---

[10]   To the extent that Plaintiff's objection to Nurse Bergstrom's "paper review" of her file is based on the fact that Nurse Bergstrom is not a physician, this objection is unfounded.  See Fabyanic, 2009 WL 775404 at *9 ("There is no requirement that an administrator of an ERISA-governed benefits plan utilize a physician in reviewing claims.")

evidence demonstrates that Reliance disagreed with Dr. Eiras'
opinion and, instead, credited Dr. Choi's.  Because "[a]
professional disagreement does not amount to an arbitrary refusal
to credit," Reliance's decision to credit Dr. Choi over Dr. Eiras
was not arbitrary and capricious.  Stratton v. E.I. DuPont De
Nemours & Co., 363 F.3d 250, 258 (3d Cir. 2004).

        Third, Plaintiff argues that Reliance's focus on the
results of her FCE is arbitrary and capricious because requiring
"objective data for diseases like chronic fatigue syndrome and
Lyme's disease which present variable symptoms is arbitrary and
capricious as a matter of law."  (Pl.'s Mot. for Summ. J. at 18,
doc. no. 9.)  In support of her argument, Plaintiff relies
primarily on Mitchell v. Eastman Kodak Co., in which the Third
Circuit held that an insurer acted arbitrarily and capriciously
in requiring objective medical evidence of Plaintiff's
disability, where Plaintiff suffered from chronic fatigue
syndrome.  113 F.3d 433, 442-43 (3d Cir. 1997) ("Although in some
contexts it may not be arbitrary and capricious to require
clinical evidence of the etiology of allegedly disabling symptoms
in order to verify that there is no malingering, we conclude that
it was arbitrary and capricious to require such evidence in the
context of this Plan and CFS."); see also Brown v. Continental
Casualty Co., 348 F. Supp. 2d 358, 367-68 (E.D. Pa. 2004)
(finding FCE "unpersuasive" where Plaintiff suffered from

- 15 -

fibromyalgia, a disease characterized by variable symptoms).[11]

In response, Reliance urges the Court to distinguish between "requiring objective proof that the claimant has a condition with objective proof that a particular condition is disabling." (Def.'s Mot. for Summ. J. at 7, doc. no. 11.)  In other words, Reliance does not offer the FCE as proof that Plaintiff suffers from the litany of ailments described in her complaint, but rather as proof that, despite these symptoms, Plaintiff is capable of performing full-time sedentary work with restrictions.  The Court finds this distinction persuasive.  See Lamanna v. Special Agents Mut. Benefits Ass'n, 546 F. Supp. 2d 261, 296 (W.D. Pa. 2008) ("While the amount of fatigue or pain an individual experiences may be entirely subjective, the extent to which those conditions limit her functional capabilities can be objectively measured"); see also Tesche v. Continental Casualty Co., 109 Fed. Appx. 495, 498 (3d Cir. 2004) ("[W]e note that the record, while noting a diagnosis of fibromyalgia, is devoid of any medical opinion that she is disabled from any occupation due to fibromyalgia.")

The case of Gibson v. Hartford Life and Accident Ins. Co. is instructive.  No. 06-3814, 2007 WL 1892486, at *13 (E.D.

---

[11]   At least one other court has expressed the view that "an FCE is a highly questionable tool for determining whether a fibromyalgia patient is disabled."  See, e.g., Dorsey v. Provident Life and Accident Insurance Co., 167 F. Supp 2d 846, 856 (E.D. Pa. 2001).

Pa. Jun. 29, 2007).  There, the court rejected plaintiff's
argument, based on <u>Mitchell</u>, that "'the precedent within the
Third Circuit holds that it is arbitrary and capricious to
require objective medical evidence in the context of a claim for
long-term disability benefits as a result of chronic fatigue
syndrome or fibromyalgia.'"  <u>Id.</u> at *12.  The <u>Gibson</u> court noted
that, unlike in <u>Mitchell</u>, there was no record evidence to suggest
"that the decision to deny benefits was based on the absence of a
known etiology for Plaintiff's symptoms."  <u>Id.</u>  Rather, the
denial of benefits in <u>Gibson</u> was based on the insurer's
assessment of plaintiff's "Physical Capacities Evaluation Form,"
and a vocational review.[12]  Similarly, based on the record before
the Court, there is simply no evidence that Reliance's

---

[12]     Specifically, in <u>Gibson</u>, the Physical Capacity
Evaluation Form indicated that plaintiff could "sit for eight
hours at a time, can stand for 30 minutes at a time for a total
of two hours per day, and can walk for 30 minutes at a time for a
total of two hours per day."  2007 WL 1892486 at *9.
Additionally, the plaintiff was "capable of 'occasionally'
driving, climbing, balancing, stooping, kneeling, crouching and
crawling, and capable of 'frequently' reaching above her
shoulder, reaching at 'desk level,' reaching below waist level
and using her hands to grip and hold."  <u>Id.</u> (citations omitted).

     Like the plaintiff in <u>Gibson</u>, Plaintiff's FCE
demonstrated that she is capable of "forward bending in standing,
sitting and standing tolerance, walking, stairs, step ladder
climbing and crawling, kneeling and half kneel" and had "average
hand coordination bilaterally."  (Pl.'s Mot. for Summ. J. Ex. K,
doc. no. 10.)  Additionally, the FCE examiner noted that "[t]he
client's perception of abilities is less than those the client
was actually able to do safely today."  (<u>Id.</u>)

discontinuation of Plaintiff's long-term disability benefits was based on a lack of a known etiology for either chronic fatigue syndrome or fibromyalgia.

Here, the FCE demonstrated that, despite Plaintiff's multiple conditions, she was able to exert "maximal effort" during the course of a two-day exam and was capable of full time sedentary work, so long as certain restrictions were imposed. (Pl.'s Mot. for Summ. J. Ex. K, doc. no. 10 (noting that Plaintiff had "[s]ome limitation in overhead work due to prolonged use of upper extremities" and "[s]ignificant weaknesses in grip strength").)  As a result of Plaintiff's performance, Reliance concluded that Plaintiff no longer met "the group policy's definition of Total Disability from [her] occupation." (Pl.'s Mot. for Summ. J. Ex. M, doc. no. 10.)  This conclusion was later confirmed by Dr. Choi.  Based on the record before the Court, Reliance's decision was not unreasonable.

Fourth, Plaintiff argues that Reliance practiced "self-serving selectivity in the use and interpretation of physicians' reports," Post, 501 F.3d at 165, because it ignored reports from 1994 and 1999, which allegedly demonstrate Plaintiff's neuropsychological impairment.  (See Pl.'s Mot. for Summ. J. at 17, doc. no. 9; id. Exs. D & E, doc. no. 10.)  In response, Reliance argues that (1) the 1994 and 1999 reports were not "objective" and (2) because there is absolutely no record

evidence that Plaintiff ever received treatment for a

neuropsychological impairment, Plaintiff has not met her burden

of proof.  (Def.'s Mot. for Summ. J. at 9, doc. no. 11.)[13]

In support of its first argument, Reliance offers Dr.

Choi's December 7, 2007 report, in which he concluded that the

1999 neuropsychological examination "did not demonstrate the use

of control measures."  (Pl.'s Mot. for Summ. J. Ex. O, doc. no.

10.)  Even if true, this statement, without more, does not

explain adequately why Reliance reversed its earlier

determination that, in addition to "frequent outbreaks of

shingles," Plaintiff suffered from a from a "neuropsych

impairm."[14]  (Id. Ex. H (2004 Medical/Vocational Review by Nurse

Bergstrom)); see also Smith v. Prudential Ins. Co. of America,

---

[13]    The Court notes that while the burden of proving
disability ultimately lies with Plaintiff, "once a claimant makes
a prima facie showing of disability through physicians' reports .
. . if the insurer wishes to call into question the scientific
basis of those reports . . . then the burden will lie with the
insurer to support the basis of its objection."  Lasser v.
Reliance Standard Life Ins. Co., 344 F. 3d 381, 391 (3d Cir.
2003).

[14]    Importantly, based on the administrative record before
the Court, it is not entirely clear to what extent Plaintiff's
status as "totally disabled" depended upon her neuropsychological
impairment.  Although, as noted above, Reliance credited
Plaintiff's neuropsychological impairment at times prior to its
2007 review, certain documents in the record fail to mention it
at all.  For example, the FCE lists Plaintiff's primary diagnosis
as "Shingles / Post herpatic neuralgia" and her secondary
diagnosis as "Depression, Anxiety, Chronic Fatigue, Fibromyalgia,
Lyme."  (Pl.'s Mot. for Summ. J. Ex. K, doc. no. 10; see also id.
Ex. M (noting that Plaintiff ceased work "due to Chronic Fatigue
Syndrome as a result of Post Herpatic Neuralgia").)

- 19 -

513 F. Supp. 2d 448, 454 (E.D. Pa. 2007) (finding that insurer's failure to explain why it "relied on [a doctor's] opinion twice to grant benefits but refused to do so for [plaintiff's] third application" was problematic).

Moreover, with respect to the burden of proof, it is clear that Plaintiff has made at least a prima facie showing of disability based on a neuropsychological impairment.  In fact, the administrative record contains two neuropsychological evaluations, dated 1994 and 1999.  (See Pl.'s Mot. for Summ. J. Exs. D & E, doc. no. 10.)  In the 1994 evaluation, Kenneth Freundlich, Ph.D. concluded that, although Plaintiff's functioning is "generally intact," she "experiences attentional limitations, diminished memory and slight problem-solving difficulties . . . . [Plaintiff's] ability to sustain attention over extended periods of time is diminished.  She is able to focus in spurts, but tasks that require ongoing sustained attention may produce fatigue. . . . The difference between her intelligence and memory is sufficiently large as to suggest diminished skills.  Finally, her ability to retain newly learned information is below average." (Id. Ex. D.)  Similarly, in 1999, Edward J. Murphy, Psy. D., concluded that "Ms. Wernicki at present is disabled from returning to her position as a graphic artist.  Her inability to sustain focused attention, short term memory difficulties, and slowness in processing severely limit

- 20 -

her ability to consistently perform at work."  (Id. Ex. E.)
These reports, even in the absence of any evidence indicating the
Plaintiff has received treatment for a neuropsychological
impairment, establish Plaintiff's prima facie case.

Reliance has essentially argued that Plaintiff's
neuropsychological impairment is irrelevant because "there is no
contemporaneous evidence of such an impairment." (Def.'s Mot.
for Summ. J. at 10, doc. no. 12.)[15]  Reliance does not cite any
case law in support of this argument.  Additionally, unlike the
physical limitations at issue in this case, the FCE does not
provide an adequate ground for Reliance to reverse its previous
determination that Plaintiff was suffering from a
neuropsychological impairment.  Nurse Bergstrom conceded during
her deposition that the FCE did not "measure any type of
neuropsychological impairment or disorder" but rather was
designed to test a claimant's "strength" and "endurance."  (Pl.'s
Mot. for Summ. J. Ex. G 31:2-6.)  Additionally, Nurse Bergstrom
testified that Plaintiff's neuropsychological condition had not
been a factor in her 2007 review of Plaintiff's claim.  (Id. Ex.
G 48:10-13 ("Q: Was there any consideration whatsoever of her
neuropsychological condition in your 2007 evaluation? / A: No.");
id. Ex. G 49:15-8 ("Q: And there was nothing in the medical

---

[15]    Additionally, Reliance correctly points out that it had
no duty to gather additional information regarding Plaintiff's
neuropsychological impairment.  Pinto, 214 F.3d at 394 n.8.

records to discredit the testing that had been done in 1999? / A: No.").)  Thus, even under the deferential "arbitrary and capricious" standard, to the extent that Plaintiff's award of long-term disability benefits was based on her neuropsychological impairment, the Court is unable to find that Reliance's decision to discontinue these benefits was supported by sufficient evidence.

     For these reasons, Plaintiff's motion for summary judgment will be granted in part and denied in part.  On the issue of Plaintiff's physical limitations, Plaintiff's motion for summary judgment will be denied because Reliance's decision to discontinue her long-term disability benefits, which was based on the results of the FCE, an independent review of Plaintiff's claim file by Dr. Choi, and a vocational review, was not arbitrary and capricious.

     On the issue of Plaintiff's neuropsychological impairment, if any, Plaintiff's motion for summary judgment will be granted because Reliance's decision to discontinue her long-term disability benefits was arbitrary and capricious.

     B.   Reliance's Motion for Summary Judgment

     Reliance cross-moves for summary judgment, arguing that its discontinuation of Plaintiff's long-term disability benefits was not arbitrary and capricious.  Reliance acknowledges that it

was operating under a structural conflict of interest, but disputes each of the so-called "procedural anomalies" in its claim review process that Plaintiff challenges in her motion.  In support of its motion, Reliance relies upon the administrative record submitted by Plaintiff.  For the reasons stated above, Reliance's motion for summary judgment will be granted in part and denied in part.

On the issue of Plaintiff's physical limitations, Reliance's motion for summary judgment will be granted because its decision to discontinue Plaintiff's long-term disability benefits, which was based on the results of the FCE, an independent review of Plaintiff's claim file by Dr. Choi, and a vocational review, was not arbitrary and capricious.

On the issue of Plaintiff's neuropsychological impairment, if any, Reliance's motion for summary judgment will be denied because its decision to discontinue her long-term disability benefits was arbitrary and capricious.


IV.   REMEDY

This Court holds that Reliance's decision that Plaintiff was capable of returning to work in a full-time sedentary position, with restrictions, was arbitrary and capricious, but only to the extent that in making this

determination, Reliance failed to consider Plaintiff's neuropsychological impairment, if any.

Because the administrative record is insufficient for the Court to determine to what extent, if any, Plaintiff's "total disability" status prior to May 3, 2007 was based on a neuropsychological impairment, the Court will remand the case to the claim administrator (Reliance) for further evaluation consistent with this opinion.  See Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health and Welfare Plan, 298 F. 3d 191, 200 (3d Cir. 2002) (remanding case to plan administrator for first consideration of facts newly made relevant by the Court's opinion); Smith, 513 F. Supp. 2d at 456 (remanding to plan administrator where administrative record insufficient for Court to determine certain relevant facts).


V.   CONCLUSION

For all of these reasons, Plaintiff's motion for summary judgment will be granted in part and denied in part. Reliance's motion for summary judgment will be granted in part and denied in part.  The matter will be remanded to the claim administrator (Reliance) for further proceedings consistent with this opinion.  An appropriate order follows.